IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| KELLIE H.,[1] <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, <br><br> Defendant. | Case No. 6:22-cv-01822-HL <br><br> **OPINION AND ORDER** |

HALLMAN, United States Magistrate Judge:

  Plaintiff Kellie H. brings this action under the Social Security Act (the "Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied plaintiff's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. 42 U.S.C. § 401 *et seq.* For the following reasons, the decision of the Commissioner is AFFIRMED.

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name for non-governmental parties and their immediate family members.

**STANDARD OF REVIEW**

42 U.S.C. § 405(g) provides for judicial review of the Social Security Administration's disability determinations: "The court shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

**BACKGROUND**

**I.      Plaintiff's Application**

Plaintiff alleges disability based on tingling/numbness from head to toe, tremors, vision loss, short term memory loss, balance issues, aching joints, depression, fatigue, and immune

deficiencies. Tr. 63.[2] At the time of her alleged onset date, she was 32 years old. Tr. 64. She has completed high school and has past relevant work as a management trainee, sandwich maker, cashier II, and home health aide. Tr. 23, 37.

Plaintiff protectively applied for DIB and SSI on December 10, 2019, alleging an onset date of March 1, 2017. Tr. 65, 85. Her applications were denied initially on November 25, 2020, and on reconsideration on March 18, 2021. Tr. 116, 125. Plaintiff subsequently requested a hearing, which was held on October 21, 2021, before Administrative Law Judge ("ALJ") Katherine Weatherly. Tr. 30. Plaintiff appeared and testified at the hearing, represented by counsel. Tr. 30-63. A vocational expert ("VE"), Keta Berkshire, also testified. Tr. 55-62. On November 29, 2021, the ALJ issued a decision denying plaintiff's claim. Tr. 24-25. Plaintiff requested the Appeals Council review ALJ Weatherly's decision, which was denied on September 23, 2022. Tr. 1-6. Plaintiff then sought review before this Court.[3]

## II.  Sequential Disability Process

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. At

---

[2] Citations to "Tr." are to the Administrative Record. (ECF 12).

[3] The parties have consented to the jurisdiction of a Magistrate Judge pursuant to 28 U.S.C. § 636. (ECF 6).

step one, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c) & 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n. 5.

Finally, at step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 142; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

### III.   The ALJ's Decision

At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity since her alleged onset date of March 1, 2017. Tr. 17.

At step two, the ALJ determined that plaintiff has the following severe impairments: "neuropathy, ocular migraines, anxiety, and depression." *Id.*

At step three, the ALJ determined that plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 18. The ALJ then resolved that plaintiff had the RFC to do medium work except that she can occasionally climb ramps, stairs, ladders, ropes and scaffolds; frequently balance; occasionally feel and finger bilaterally; can persist at simple, routine, repetitive tasks; make simple work-related decisions; perform work with few if any changes in the workplace; cannot do any assembly-line pace work; and is to avoid concentrated exposure to vibration, pulmonary irritants, and workplace hazards. Tr. 19.

At step four, the ALJ found that plaintiff could not perform her past relevant work. Tr. 23.

At step five—considering plaintiff's age, education, work experience, and RFC—the ALJ found that a significant number of jobs existed in the national economy that plaintiff could perform, including work as a farm worker, cleaner II, and automobile body repair helper. Tr. 24. Thus, the ALJ concluded that plaintiff is not disabled. Tr. 24-25.

## DISCUSSION

Plaintiff argues that the ALJ committed three errors: (1) failing to identify specific, clear and convincing reasons for rejecting plaintiff's subjective symptom testimony; (2) improperly finding the medical opinions of Kristian Balle, DO, and Usha Honeyman, DC, ND, less than fully persuasive; and (3) improperly rejecting the lay witness testimony of plaintiff's father.

I.   **Subjective Symptom Testimony**

Plaintiff contends that the ALJ failed to provide specific, clear and convincing reasons to reject her symptom testimony. Pl.'s Opening Br. 12-17. Specifically, plaintiff contends that her testimony could not be rejected simply because it was unsupported by the objective medical evidence. *Id*. at 14-16.

A.   **Legal Standards**

The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of his symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the claimant must produce objective medical evidence of one or more impairments that could reasonably be expected to produce some degree of symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant need not show that the impairment could reasonably be expected to cause the severity of the symptoms, but only show that it could reasonably have caused some degree of the symptoms. *Id.*

Second, the ALJ must assess the claimant's testimony regarding the severity of the symptoms. *Id.* The ALJ can reject the claimant's testimony "only by offering specific, clear and convincing reasons for doing so." *Id.* Thus, the ALJ must specifically identify the testimony that they do not credit and must explain what evidence undermines the testimony. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). In other words, the "clear and convincing" standard requires an ALJ to "show [their] work." *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022).

General findings are insufficient to support an adverse determination; the ALJ must rely on substantial evidence. *Holohan*, 246 F.3d at 1208. To discredit a plaintiff's testimony

regarding the degree of impairment, the ALJ must make a "determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). The question is not whether ALJ's rationale convinces the court, but whether their rationale "is clear enough that it has the power to convince." *Smartt*, 53 F.4th at 499.

      **B.**      **Plaintiff's Testimony**

At the hearing, plaintiff reported that she could not work on a regular, full-time basis because she experiences tremors and loss of muscle control in her legs, has tingling, numbness, and nerve pain throughout her body, has bouts of vision loss several times a day, and that the tingling and numbness affects her grip, causing her to drop things, while also affecting her ability to feel, such as a single instance of cutting herself without feeling it. Tr. 47-49. Plaintiff testified that the tremors and loss of muscle control in her legs happens once a month, while her vision loss, tingling and numbness, and nerve pain are constant. Tr. 47. Because of the intermittent tremors and muscle weakness, she has been using a cane since 2017. Tr. 45. She further testified that the tingling and numbness also affect her ability to stand and walk and that she must sit when the symptoms are greater. Tr. 49. She continued, saying that she could only stand and walk for about 30 minutes, and that she could only walk about three blocks. Tr. 49. When it came to lifting, she testified to being able to lift up to 50 pounds but that she could lift no amount frequently, stating that she could only have two active days a week and would then need to rest. Tr. 50. She then stated that she could consistently lift 15 to 20 pounds for an hour and a half on her active days. Tr. 51. For her nerve pain, she explained that she has one that centers on her funny bone that is constant and every day, and a more severe level that happens once a month. Tr. 52.

When it came to her memory, comprehension, and understanding, plaintiff testified that she has a very limited memory span because of her Lyme disease. Tr. 51-52. She stated that she can remember things for a couple of days, that she can't hold numbers in her head for long, and that she can no longer calculate her grocery list in her head. Tr. 52. Plaintiff stated that she takes rifampin, citalopram, azithromycin, hydrocortisone, and promethazine for her symptoms. Tr. 41. She explained that the citalopram makes her extremely nauseous, which is why she takes promethazine, and that if she takes all of her medications at once they make her drowsy, so she divides them into morning and night. Tr. 42-43.

The ALJ determined that her medically determinable impairments could reasonably be expected to produce some degree of symptoms, but her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Tr. 20. The ALJ reasoned that plaintiff's testimony of her disabling limitations was inconsistent with evidence from the medical record. Tr. 20-21. Plaintiff argues only that the ALJ cannot reject her testimony merely because it is unsupported by objective evidence.

### C.    Inconsistent Medical Record

An ALJ may reject a claimant's symptom testimony if that testimony is contradicted by evidence in the medical record. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). While an ALJ may also consider the lack of corroborating objective medical evidence as one factor in "determining the severity of the claimant's pain," *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001), they cannot reject subjective pain testimony solely on that basis. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006); *see also* 20 C.F.R. § 404.1529(c)(2) (the Commissioner "will not reject your statements about the intensity and

persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements").

Here, the ALJ concluded that plaintiff's testimony regarding her pain, tingling and numbness, grip issues, vision loss, and balance issues caused by tremors and loss of muscle control, was contradicted by medical records showing that her neuropathy and ocular migraines were adequately treated with medication, and by testing results showing that her reported limitations did not exist. Tr. 20-21. As support for this conclusion, the ALJ pointed to records showing ocular migraines were first considered in February 2018, she was subsequently given medication and reported that her symptoms, such as her tremors, were improved in April and May. Tr. 353, 424, 467. Plaintiff also testified that she could only stand and walk for short distances and only for 30 minutes at a time, could only infrequently lift 15 to 20 pounds on her active days, and that she had balance issues. However, Dr. Balle's consultative examination directly refute these claims, with Dr. Balle stating that plaintiff had no balance problems, that she could walk for at least two-to-four hours, that she had no limitations in standing, and that she could lift and carry over 25 pounds occasionally and less than 25 pounds frequently. Tr. 523, 528-529. Plaintiff also complained that the tingling and numbness in her hands caused her to constantly drop things. Yet, Dr. Balle's examination, and other evidence in the record, contradicted this claim as well, with only a single record stating she had weak grip bilaterally and some diminished sensation to pinprick, while testing noted that she had no issues with her grasp. Tr. 348, 351, 354, 524-25. As for her vision, plaintiff's ophthalmologist noted she had normal visual fields and no evidence of vision loss, but that she might need new corrective lenses. Tr. 535, 558.

Based on the record before the Court, the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting plaintiff's subjective symptom testimony based on contradictory medical evidence. An ALJ need not use the magic words, "I reject [this evidence] because…" in order to discount evidence. *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989). A reviewing court is not "deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion." *Id*. The ALJ's citation to these objective findings is "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas*, 278 F.3d at 958 (9th Cir. 2002). This objective evidence is therefore a clear and convincing reason, supported by substantial evidence, for discounting plaintiff's subjective symptom testimony.

## II.   Medical Opinions

Plaintiff alleges that the ALJ erred in finding the medical opinions of Kristian Balle, DO, and Usha Honeyman, DC, ND, less than fully persuasive. Pl.'s Opening Br. 5-12. Specifically, she argues that the ALJ improperly discounted Dr. Balle's limitations regarding walking, lifting and carrying, and Dr. Honeyman's limitation that she would not be able to sustain full-time work because of her fatigue, lack of concentration, ataxia, tremor, and intermittent loss of vision. Pl.'s Opening Br. 8, 10.

### A.   Legal standards

For disability claims filed on or after March 27, 2017, new regulations for evaluating medical opinion evidence apply. *Revisions to Rules Regarding the Evaluation of Medical Opinion Evidence (Revisions to Rules)*, 2017 WL 168819, 82 Fed. Reg. 5844, at *5867-68 (Jan 18, 2017). Under those revised regulations, the ALJ no longer "weighs" medical opinions but instead determines which are most "persuasive." 20 C.F.R. §§ 404.1520c(a). The new

regulations eliminate the hierarchy of medical opinions and state that the agency does not defer to any particular medical opinions, even those from treating sources. *Id.*; *see also Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) ("The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant."). Under the new regulations, the ALJ primarily considers the "supportability" and "consistency" of the opinions in determining whether an opinion is persuasive. 20 C.F.R. § 404.1520c(c). Supportability is determined by whether the medical source presents explanations and objective medical evidence to support their opinions. *Id.* § 404.1520c(c)(1). Consistency is determined by how consistent the opinion is with evidence from other medical and nonmedical sources. *Id.* § 404.1520c(c)(2).

An ALJ may also consider a medical source's relationship with the claimant by looking at factors such as the length, purpose, or extent of the treatment relationship, the frequency of the claimant's examinations, and whether there is an examining relationship. *Id.* § 404.1520c(c)(3). An ALJ is not, however, required to explain how she considered those secondary medical factors unless she finds that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. *Id.* § 404.1520c(b)(2)- (3). The regulations require ALJs to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Id.* § 404.1520c(c)(b). The court must, moreover, continue to consider whether the ALJ's analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(g); *Woods*, 32 F.4th at 792 ("Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence."). *Id.*

B.     Dr. Kristian Balle

Plaintiff first argues that the ALJ improperly discredited Dr. Balle's opinion regarding a two-to-four hour walking limitation, a limitation to occasional lifting and carrying over 25 pounds. The ALJ found that Dr. Balle's opinion was not persuasive as it pertained to walking and lifting and carrying. Tr. 22. The ALJ found that this portion of Dr. Balle's opinion was inconsistent with Dr. Balle's testing and other medical evidence, such as consistent reports of normal gait, normal strength, and generally normal sensation. Tr. 22 (citing Tr. 341-43, 347-48, 350-51).

Dr. Balle conducted a consultative examination on November 7, 2020. Tr. 521. In the report, Dr. Balle noted that plaintiff had no limitations in sitting and standing, could walk for two-to-four hours a day, could lift and carry over 25 pounds occasionally and less than 25 pounds frequently, and could occasionally handle, feel, and grasp. Dr. Balle further noted that plaintiff had no limitations in bending, squatting, reaching, communicating, and no environmental limitations. Tr. 528-29. Dr. Balle also noted that the assessed limitations for walking, lifting and carrying, and handling, feeling, and grasping, were based on her neuropathy. *Id*.

The ALJ found the walking and lifting and carrying limitations unpersuasive because it was based on a "one-time examination" and because it was unsupported by other medical evidence. Tr. 22. This Court agrees with Plaintiff that discounting Dr. Balle's opinion because plaintiff was seen only a single time is not a legitimate reason to discount a medical opinion, especially considering that consultative examinations ordered by the agency are generally a one-time examination. However, the ALJ's finding that Dr. Balle's opinion was not supported by objective evidence in the record was supported by substantial evidence.

For example, Dr. Balle's testing showed that plaintiff had no issues lifting and carrying light objects, and no issues pinching, grasping, and manipulating both small and large objects. Tr. 524-25. Other medical records also show that while plaintiff had a single instance of weak grip bilaterally, all subsequent examinations showed normal strength and sensation. Tr. 343, 348, 351, 354, 360, 369. While Dr. Balle noted that plaintiff would have difficulties with fine motor control due to her neuropathy because of diminished sensation to pin prick over dorsal hands and distal lower extremities, this was not reflected in testing, which showed that plaintiff had no issues with fine motor control. Tr. 524-25. Likewise, Dr. Balle noted that plaintiff could only walk two-to-four hours a day, but noted that plaintiff had no balance issues, could squat and rise with ease, could sit and rise without assistance, had no difficulty getting up and down from the exam table, could walk on heels and toes, could stand on one foot bilaterally, and that tandem walking was normal. Tr. 524. Plaintiff also had no joint swelling, erythema, effusion, tenderness or deformity, nor did Dr. Balle note that she had a cane or walking stick for balance, despite her concerns that she never knew when she would experience tremors or muscle weakness. *Id*. Dr. Balle also assessed a limitation to occasionally lifting and carrying over 25 pounds and less than 25 pounds frequently, yet plaintiff had 5/5 strength across the board. Tr. 523.

Given that plaintiff had no issues with fine motor control, no grip or handling issues, displayed normal strength and mostly normal sensation in her upper extremities, and presented with no balance issues and full strength in her lower extremities, as well as a completely normal gait, the ALJ's rejection of Dr. Balle's limitations for walking and lifting and carrying is supported by substantial evidence.

### C.     Usha Honeyman, DC, ND

Plaintiff next argues that the ALJ failed to properly consider Honeyman's medical opinion for supportability and consistency. The ALJ found Honeyman's medical opinion unpersuasive because, as a naturopath, Honeyman is not an acceptable medical source, and her opinion is not supported by her own records or other medical evidence in the record. Tr. 21.

Honeyman served as plaintiff's treating naturopath starting November 19, 2018. Tr. 562. She provided five records of plaintiff's office visits from January 18, 2019, to May 21, 2021, of which only three were in person. Tr. 514-20, 532. At issue is an assessment provided on November 3, 2021, in which Honeyman states that plaintiff could not sustain full time work primarily due to fatigue, lack of concentration, ataxia, tremor, and intermittent loss of vision. Tr. 563. Honeyman stated that ataxia and tremors make plaintiff's coordination and movement unpredictable, that her fatigue fluctuates, and that her neurological disease would limit her ability to perform tasks. *Id*.

As a naturopath, Honeyman is not an acceptable medical source capable of establishing an impairment. *See* 20 C.F.R. §§ 404.1502(a). At issue here, however, is not Honeyman's diagnoses, but the proffered medical opinion. While Honeyman is not an acceptable medical source for the purposes of establishing an impairment, she may still offer a medical opinion. As defined in 20 C.F.R. §§ 404.1502(d) and 404.1513(a)(2), a medical opinion is a statement from a medical source, and a medical source, as it pertains to Honeyman, is an individual licensed as a healthcare worker by a state working within their scope of permitted practice. Plaintiff establishes that Honeyman is such a licensed individual, and the Commissioner does not argue otherwise. *See* Pl.'s Br. 11.

As previously discussed, Honeyman's diagnosis of Lyme disease as plaintiff's neurological condition is irrelevant. Moreover, Honeyman's opinion as it relates to ataxia, tremors, fatigue, lack of concentration, and intermittent loss of vision are unsupported. In the only three in-person visits plaintiff had, Honeyman noted that plaintiff had normal findings in all aspects, except for one report where she appeared cyanotic or jaundiced. Tr. 516, 518, 519. Plaintiff argues that, aside from jaundiced or cyanotic skin color, Honeyman also observed Adie's pupil, flat affect, slowed movements, and episodic hypothermia. Pl.'s Opening Br. 11-12. However, while Honeyman noted these signs and symptoms in her medical opinion, these are not objective findings observed by Honeyman in any of her treatment records, and do not constitute objective medical evidence as defined in 20 C.F.R. § 404.1502(f)-(g). Furthermore, none of Honeyman's purported symptoms support the severe limitations she assessed.

In sum, Honeyman's finding that plaintiff is incapable of sustaining full time work due to fatigue, lack of concentration, ataxia, tremor, and intermittent loss of vision is unsupported by her own notes, which contain no findings of the above symptoms. Thus, the ALJ did not err in finding Honeyman's medical opinion unpersuasive.

### III.     Lay Witness Testimony

Plaintiff contends that the ALJ erred by failing to properly address the lay witness testimony provided by plaintiff's father by failing to provide reasons germane to the witness. Pl.'s Opening Br. 17-18.

Lay testimony concerning a claimant's symptoms or how an impairment affects the ability to work is competent evidence that an ALJ must take into account. *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012) (citation and internal quotation omitted). The ALJ must provide "reasons germane to each witness" to reject such testimony. *Id*. (citation and internal quotation

omitted). However, failure to discuss or weigh third-party testimony is harmless where the ALJ validly discounts similar evidence. *See id*. at 1118-19 (ALJ's failure to comment upon lay witness testimony is harmless where "the testimony is similar to other testimony that the ALJ validly discounted, or where the testimony is contradicted by more reliable medical evidence that the ALJ credited").

In the third-party report, plaintiff's father stated that plaintiff suffers from depression, that she has varying degrees of dizziness, vision black outs, can only concentrate for 10-15 minutes at a time, can only walk one block or up to 50 yards, that she must re-read written instructions several times, that she is easily confused, that she does laundry and some cleaning but it is dependent on the severity of her dizziness, shakes, and nausea, and that she needs reminding to take her medication. Tr. 297-301. The report also stated that she takes care of her pets, has no problem taking care of her personal hygiene, and that she reads and watches television. Tr. 296, 299. Lastly, the report states that plaintiff's Lyme disease causes nausea, dizziness, blackouts in her vision, tingling and numbness, shakes, disorientation, and memory and concentration issues. Tr. 302.

The ALJ found the lay witness testimony to be of "little evidentiary value" because the "basis for many of the limitations is unsubstantiated in terms of a diagnosis and symptoms." Tr. 20. Plaintiff argues this was not a reason "germane to the witness" because even though Lyme disease is not a medically determinable impairment, she still suffers from her symptoms. Pl.'s Br. 17-18. The Commissioner argues that the ALJ did provide a reason germane to the witness, and that the third-party report contains similar information to her subjective symptom testimony and, therefore, the same reasons used to discount that testimony applies with equal force here. Def.'s Br. 13-14. The Court agrees with the Commissioner.

The third-party report noted that Lyme disease was the cause of her symptoms, yet as already established, Lyme disease is not a medically determinable impairment. Plaintiff further argues that even without the diagnosis for Lyme disease, plaintiff still suffers from her symptoms, including tremors, loss of vision, lack of concentration, and an inability to stand or walk for any significant length of time. However, the issue is not whether she suffers from those symptoms, but the degree to which she suffers. As discussed above, the degree of suffering is unsupported, and the plaintiff has not pointed to any evidence that would support the degree alleged, or even that some of the alleged symptoms exist.

Because the ALJ provided a reason germane to the witness, the ALJ did not err in discounting the lay witness testimony.[4]

## CONCLUSION

Based on the foregoing, pursuant to 42 U.S.C. § 405(g), sentence four, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

DATED this 20th day of May 2024.

ANDREW HALLMAN
United States Magistrate Judge

---

[4] Notably, this Court does not reach Commissioner's second argument, which is that the ALJ rejected the lay witness testimony for the same reasons as plaintiff's testimony because the two were similar. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009). Because the ALJ does not make this finding, the Commissioner's argument is a post-hoc rationalization this Court cannot consider. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).